NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

March 26, 2020

Stephen T. Sullivan, Jr., Esq.
Keefe Law Firm
125 Half Mile Road, Suite 100
Red Bank, NJ 07701
*Attorney for Plaintiff Ronald R. Gosselin*

James F. Dronzek, Esq.
Chasan Leyner & Lamparello, PC
300 Lighting Way
Secaucus, NJ 07094
*Attorney for Defendant Passaic Valley Sewerage Commission*

Joseph Dirienzo, Esq.
Dirienzo & Dirienzo, PA
116 St. Paul Street
Westfield, NJ 07090
*Attorney for Third-Party Defendant High Voltage Maintenance Corp.*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

**Re:** *Gosselin v. Passaic Valley Sewerage Commission et al.*
**Civil Action No. 15-6528 (SDW) (JAD)**

Counsel:

Before this Court is Third-Party Defendant High Voltage Maintenance Corp.'s ("HVM") Motion to Bar Evidence of Plaintiff Ronald R. Gosselin's ("Plaintiff") Settlement with Defendant/Third-Party Plaintiff Passaic Valley Sewerage Commission ("PVSC") From Trial. For the reasons discussed below, HVM's motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This Court, writing for the parties, summarizes only those facts that are relevant to the instant motion. On May 2, 2014, PVSC and HVM executed a contract for HVM to perform preventative maintenance and repairs of various high voltage systems at a PVSC facility located in Newark, NJ. (*See* D.E. 95-2 at 6–43.) The contract included the following indemnity provision inserted by HVM:

> [HVM] agrees to only indemnify, hold harmless and defend [PVSC] against any third party claims for personal injury, death, or tangible property damage, resulting from [HVM]'s negligence, reduced to the extent of any other party's negligence, provided [HVM] is provided reasonable notice regarding such claim and has the sole right to select and direct counsel and settle the claim. THIS INDEMNIFICATION OBLIGATION IS NOT SUBJECT TO THE LIMIT OF LIABILITY DESCRIBED BELOW.

(*Id.* at 43.)

On May 5, 2014, while performing the maintenance and repairs, Plaintiff, an HVM employee, suffered severe burn injuries when he approached an energized high voltage line that he thought was de-energized. (*See* D.E. 95-10 at 9.) Plaintiff filed suit against PVSC on July 1, 2015, in the Superior Court of New Jersey, Essex County, alleging negligence and violations of various statutes and regulations. (*See* D.E. 1.) PVSC removed the suit to this Court on August 31, 2015 and filed a third-party complaint against HVM seeking indemnification, thereby providing notice to HVM of Plaintiff's claim. (D.E. 1–2.) Following discovery, PVSC and Plaintiff entered mediation and PVSC subsequently settled with Plaintiff for $2,275,000 without admitting liability or negligence. (D.E. 92-25.) HVM declined to participate in the mediation or settlement, (D.E. 95-10 at 19), and instead filed the instant motion to bar evidence of the settlement from trial. (D.E. 91–92.) PVSC timely opposed. (D.E. 95–96.)[1]

## II. DISCUSSION

The indemnification clause in the PVSC/HVM contract requires HVM to indemnify PVSC for HVM's own negligence, reduced to the extent of any other party's negligence. (D.E. 95-2 at 43.) Here, PVSC seeks indemnification for a settlement it reached with Plaintiff, rather than for a judgment. In New Jersey, "[a] party may be indemnified for settlement payments it makes provided that the following three criteria are met: '(a) the indemnitee's claims are based on a valid, pre-existing indemnitor/indemnitee relationship; (b) the indemnitee faced potential liability for the claims underlying the settlement; and (c) the settlement amount was reasonable.'" *Serpa v. New Jersey Transit*, 951 A.2d 208, 213 (N.J. Super. Ct. App. Div. 2008) (quoting *Chem. Bank of N.J. Nat'l Ass'n v. Bailey*, 687 A.2d 316, 320–21 (N.J. Super. Ct. App. Div. 1997)).

There is no question that PVSC's indemnification claim is based on a valid pre-existing indemnitor/indemnitee relationship or that PVSC faced *potential* liability for the claims underlying the settlement. Therefore, PVSC requests a jury trial to determine (1) whether its settlement with Plaintiff was reasonable and (2) the extent (*i.e.*, relative percentage) to which HVM and other

---

[1] PVSC requested oral argument in a letter filed February 3, 2020. (D.E. 97.) The request is denied.

parties were negligible for Plaintiff's injuries. To this end, PVSC seeks to present its settlement before a jury solely as evidence that a settlement was reached, and not as evidence of the liability of any party. (D.E. 96 at 2.)

HVM seeks to bar evidence of PVSC's settlement with Plaintiff on the grounds that (1) it is prohibited by Federal Rule of Evidence ("FRE") 408; (2) the settlement cannot determine the value of Plaintiff's claim because it does not extinguish Plaintiff's claim against HVM; and (3) allowing the settlement to trigger HVM's indemnity obligations unconstitutionally alters the state's workers' compensation scheme. (D.E. 91-1 at 12–25.) If the settlement is admitted into evidence, HVM further argues that proof of its reasonableness cannot be established using expert opinion. (*Id.* at 26–27.) This Court addresses each of these arguments in turn.

### A. FRE 408 Prohibition

FRE 408 prohibits the Court from admitting into evidence any offer or acceptance of a settlement to "prove or disprove the validity or amount of a disputed claim." FRE 408(a)(1). HVM argues that FRE 408 prohibits the use of PVSC's settlement with Plaintiff to establish any party's negligence or the value of Plaintiff's negligence claim against PVSC. (D.E. 91-1 at 12–17.) However, FRE 408 provides no such bar: the "disputed claim" here is the validity and amount of PVSC's indemnification claim against HVM, not Plaintiff's negligence claim against PVSC (that claim has already settled). Regardless, PVSC did not admit liability when it settled with Plaintiff and it does not seek to use the settlement to establish the negligence of any party. (D.E. 92-25, 96 at 2.) The jury will be required to determine, independent of the settlement, the proportional liability of each party for Plaintiff's injuries, and the jury will *not* be asked to determine the value of Plaintiff's negligence claim against any party.

To the extent that PVSC does seek to present its settlement with Plaintiff to the jury, it is only to establish that its indemnification claim against HVM has accrued, and not the claim's validity or amount. (*Id.*) If the jury finds HVM at least partially liable for Plaintiff's injuries, the jury will then be asked whether the value of PVSC's settlement with Plaintiff was "reasonable." (*Id.*) HVM argues that FRE 408 bars use of the settlement for this purpose, too, and that the jury must instead independently determine the value of Plaintiff's claim against PVSC. (D.E. 91-1 at 15–16.) However, the "reasonableness" determination is part of the test laid out in *Serpa* and other New Jersey cases for determining the value of PVSC's indemnification claim against HVM. 951 A.2d at 213 (citations omitted). HVM cannot avoid the rule of *Serpa* and related cases by improperly wielding FRE 408. The matter before this Court is PVSC's contract claim against HVM; Plaintiff's tort claim against PVSC has settled and this Court will not ask the jury to determine what damages another jury would have awarded Plaintiff in a hypothetical tort case. *See id.* ("The allocation that the jury made in this case between [the third-party and plaintiff's employer] was for the purpose of determining liability under the indemnification agreement; it was not for the purpose of determining liability to plaintiff.").

### B. Elimination of HVM's Separate Liability to Plaintiff

HVM next argues that it cannot be required to indemnify PVSC where such payments would not extinguish any separate claims that Plaintiff may bring against HVM under the Worker's Compensation Act ("WCA"). (D.E. 91-1 at 18–22.) In New Jersey, the WCA is "the exclusive

3

remedy against the employer for a work-related injury sustained by an employee." *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 510 A.2d 1152, 1155 (N.J. 1986) (citing N.J.S.A. 34:15–8) (other citation omitted). Notably, an employer cannot be a joint tortfeasor under the WCA, and, therefore, "a third-party tortfeasor may not obtain contribution from an employer, no matter what may be the comparative negligence of the third party and the employer." *Id.* (citations omitted). However, the WCA does not "preclude[] an employer from assuming a contractual duty to indemnify a third party through an express agreement." *Id.* at 1159 (citations omitted). Such contract provisions are interpreted according to the general rules of contract construction. *Id.* (citations omitted).

Here, HVM freely contracted to indemnify PVSC for HVM's own negligence. In fact, HVM proposed the final language of the provision and insisted on PVSC's signature before moving forward with performance. (*See* D.E. 95-2 at 36–41.) Under the plain and unambiguous language, HVM has a contractual duty to indemnify PVSC for its own negligence, reduced to the extent of any other party's negligence. (D.E. 95-2 at 43.) This Court will not read an ambiguity into the plain language of the contract. *See Dayekh ex rel. Dayekh v. Thyssen Krupp Elevator Corp.*, Civ. No. 10-5109, 2013 WL 3285020, at *4 (D.N.J. June 25, 2013) (noting that "the language of a contract must be given its 'plain and ordinary meaning' when determining ambiguity" and that "terms in a contract cannot be 'tortured' to create ambiguity") (citations omitted).

Furthermore, HVM's contractual duty to PVSC is separate from any other obligation it may have to Plaintiff under the WCA.[2] HVM's cited cases do not hold otherwise, as they both involved claims for common law indemnification based on the relationship between the parties. *See Cent. Motor Parts Corp. v. E.I. duPont deNemours & Co.*, 596 A.2d 773 (N.J. Super. Ct. Law. Div. 1989), *aff'd in part and remanded in part*, 596 A.2d 759 (N.J. Super. Ct. App. Div. 1991); *Popkin Bros. v. Volk's Tire Co.*, 23 A.2d 162 (N.J. Sup. Ct. 1941). In contrast, PVSC's indemnification claim is contractual in nature and does not depend on any relationship between the parties except the indemnitor/indemnitee relationship set forth in the contract.

### C. Incorporation of Comparative/Contributory Negligence Statutes

HVM's attempts to avoid its indemnification obligations by attempting to graft the provisions of comparative negligence and contributory negligence statutes into the contract language are also unavailing. HVM argues that it only agreed to indemnify PVSC for any damages Plaintiff would be legally entitled to if he prevailed at trial, and, thus, HVM owes PVSC nothing if a jury finds Plaintiff to be more than 50% at fault for his injuries. (D.E. 91-1 at 22 (citing N.J.S.A. 2A:15-5.1).) Such a qualification is found nowhere in the plain language of the contract. The plain language of the contract requires HVM to indemnify PVSC for personal injury damages resulting from HVM's negligence—there is no incorporation of the provisions of New Jersey's comparative negligence or contributory negligence statutes. The conclusion that the statutes do not apply is further supported by the fact that HVM and PVSC are *not* joint tortfeasors. *See Ramos*, 510 A.2d at 1155; *see also Serpa*, 951 A.2d at 213–14 (distinguishing between allocation of fault

---

[2] Because HVM is not a joint tortfeasor under the WCA, PVSC's payment to Plaintiff *cannot* extinguish or reduce Plaintiff's tort-based claim against HVM. *See Ramos*, 510 A.2d at 1155.

under comparative negligence and joint contribution laws and contractual allocation of fault for determination of indemnification).

HVM further argues that not incorporating New Jersey's comparative negligence and contributory negligence statutes into the contract provision somehow violates the separation of powers clause of the New Jersey Constitution by altering the Legislature's workers' compensation scheme. (D.E. 91-1 at 23–25.) However, as discussed above, the WCA does not "preclude[] an employer from assuming a contractual duty to indemnify a third party through an express agreement." *Ramos*, 510 A.2d at 1159 (citations omitted). Such contract provisions are interpreted according to the general rules of contract construction. *Id.* (citations omitted). Following those rules, this Court will not read the contract language, which HVM drafted and insisted on, to require anything more than what its plain language states: that HVM "indemnify. . . [PVSC] against any third party claims . . . resulting from [HVM]'s negligence, reduced to the extent of any other party's negligence." (D.E. 95-2 at 43); *see Dayekh*, 2013 WL 3285020, at *4.

### D. Use of Expert Opinion

Finally, citing to FRE 704(a), HVM argues that if the settlement is admitted into evidence, PVSC should not be permitted to establish proof of its reasonableness using expert opinion. However, FRE 704(a) expressly states that an expert "opinion is not objectionable just because it embraces an ultimate issue." Thus, the rule allows an expert to opine on the ultimate issue presented in a case so long as the expert does not merely tell the jury what result it should reach. *See Krys v. Aaron*, 112 F. Supp. 3d 181, 193 (D.N.J. 2015).

Such opinion will be helpful to the jury here, where the question before the jury is the reasonableness of PVSC's business decision, not what damages another jury deciding Plaintiff's tort claim would have determined. *See Jiffy Foods Corp. v. Hartford Acc. & Indem.*, 331 F. Supp. 159, 160 (W.D. Pa. 1971). As another district court in this Circuit previously observed:

> [Litigators] must determine the reasonable value of the case in view of the risks of litigation. An attorney may decide to settle a case that could have been won, but the fact that it might have been won does not automatically make his settlement unreasonable. Litigation is a complex business requiring the attention of specialists. The reasonableness of what such specialists do in a given case is the type of technical matter in which the lay jury can be helped by the opinions of experts, for we are dealing with a question not of what a reasonably prudent man would do, but what a reasonable prudent attorney would do.

*Id.*; *see also Kelly v. Berlin*, 692 A.2d 552, 558–59 (N.J. Super. Ct. App. Div. 1997) (observing that "[t]he many factors that go into a settlement are not within the knowledge of the average juror," and that "[a]n expert in the settlement of claims, such as an experienced torts attorney . . . is necessary"). This Court will therefore permit expert testimony as to the reasonableness of PVSC's settlement with Plaintiff.

### III. CONCLUSION

For the reasons set forth above, HVM's motion is **DENIED**. An appropriate order follows.

                                                                   /s/ Susan D. Wigenton          
                                                                  **SUSAN D. WIGENTON, U.S.D.J.**

Orig:    Clerk
cc:      Parties
           Joseph A. Dickson, U.S.M.J.